**Brea RICE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 55A04–0902–CR–99.**

Court of Appeals of Indiana.

Nov. 13, 2009.

Rehearing Denied Feb. 3, 2010.

Steven C. Litz, Monrovia, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Brea Rice was charged with possession of marijuana, a Class A misdemeanor, and possession of methamphetamine, a Class D felony, after a search conducted in the course of executing an arrest warrant issued for receiving stolen property uncovered the drugs in her purse. Rice filed a motion to suppress, alleging there was no probable cause to support the issuance of the arrest warrant and the drugs, as fruits of an illegal arrest, should be suppressed. The trial court agreed the arrest warrant should not have been issued but found the police conduct was not "sufficiently deliberate [such] that exclusion can meaningfully deter it," and therefore denied Rice's motion to suppress. Rice sought and received permission to pursue this interlocutory appeal, raising the sole issue of whether the trial court abused its discre-

tion in applying the good faith exception to the exclusionary rule and denying her motion to suppress. Concluding the trial court did abuse its discretion because Indiana's good faith exception does not apply under these circumstances, we reverse.

### Facts and Procedural History [1]

On June 24, 2008, Mooresville Police Department Officers Yarnell and Harris executed a search warrant at a home located on Harrison Street in Mooresville, Indiana. The search warrant had been issued for the purpose of searching for and seizing stolen property that was allegedly stored in the residence. . Officers Yarnell and Harris did not find any of the stolen property for which they were looking at the residence, but they did observe a motorcycle helmet on a shelf in the garage. The officers left without seizing any evidence, although they did take a photograph of the motorcycle helmet.

Officer Yarnell later learned the motorcycle helmet had been reported stolen from a resident of Hamilton County. Officer Yarnell contacted the owner of the Harrison Street home, who informed him that Rice and Brian Nysewander rented the house and anything in the house or garage belonged to them. Officer Yarnell then filed an affidavit of probable cause requesting the issuance of arrest warrants for Rice and Nysewander on the charge of receiving stolen property. The affidavit provides in part:

> This probable cause is based upon the following facts and circumstances based upon my personal knowledge:

---

1. We held oral argument on October 19, 2009, at Indiana State University in Terre Haute, Indiana. We thank the faculty and staff of the Political Science Department for

organizing the event, the attorneys for their capable advocacy, and the students for their interest.

On June 24, 2008 ... I, Detective Brad A. Yarnell ... served a search warrant on [ ] W. Harrison St. . . .

Upon entering the residence photographs of items were taken by this officer. There was nothing in the residence was [sic] found to be stolen after a search by serial numbers. A photograph was taken of a black and gray motorcycle helmet that was on a shelf in the garage. . . . [T]his helmet matched the description of a helmet that was reported stolen by Craig Stebbins to the Hamilton County Sheriff's Department.

\* \* \*

The helmet was left in the residence ... as it was not verified as stolen at the time of the execution of the search warrant. A new search warrant will be asked for to retrieve the stolen property. Craig Stebbins had also reported a dirt bike stolen to the Hamilton County Sheriff's Department and it was recovered in a storage unit located at [ ] S Park Drive, Mooresville, Morgan County, Indiana and returned to the owner.

I made contact with Steve Edwards, who owns the property at [ ] W Harrison St and he stated that currently Brea Rice and Brian Nysewander rent the property and that anything inside the house and garage belong to them and are their property.

\* \* \*

Brea J. Rice did knowingly and intentionally receive and retain the property of another (motorcycle helmet belong[ing] to Craig Stebbins) that has been the subject of theft therefore committing Possession of Stolen Property.

For the foregoing reasons, I have probable cause to believe that the Defendant(s) named herein committed the offense(s) stated hereinabove.

Appellant's Amended Appendix at 10–11.[2] An information charging Rice with receiving stolen property was filed in Morgan Superior Court on July 2, 2008 and a warrant was issued for her arrest that same day.

On July 9, 2008, Mooresville Police Department Officer Whitley drove by the Harrison Street house and saw Rice at the back door. Knowing of the outstanding arrest warrant, he pulled into the driveway and told Rice he had a warrant for her arrest. He transported her to the Mooresville Police Department for questioning. Upon arrival at the police department, Officer Whitley searched Rice's purse incident to her arrest. He found two marijuana joints and a small amount of a substance that tested positive for methamphetamine.

An information charging Rice with possession of methamphetamine and possession of marijuana was filed under a new cause number. The case in which she was charged with receiving stolen property was later dismissed without prejudice on the State's motion. Rice filed a motion to suppress the drug evidence in the instant case. A hearing was held at which the parties offered argument but no testimony was taken. Rice also offered into evidence the chronological case summary and State's motion to dismiss from the receiving stolen property case. The trial court subsequently entered an order denying the motion to suppress, finding, in relevant part:

The Defendant cites the case of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984) for the proposition that reliance on a defective warrant would be excusable so long as the warrant itself was not based on an affidavit "so lacking in indicia of proba-

---

**2.** The affidavit made identical allegations against Nysewander.

ble cause as to render official belief in its existence entirely unreasonable." *United States v. Leon,* 468 U.S. at 923, 104 S.Ct. 3430. In this case, the Defendant asserts that there was no probable cause to support the charge of Receiving Stolen Property in that the affidavit of Detective Yarnell: (1) failed to show that Brea Rice knowingly retained property of another; or (2) exerted any control over the [motorcycle helmet sitting on the shelf in a garage]; or (3) knew that the helmet was even stolen, or was even sitting on the shelf in the garage. In this case, the affidavit filed in support of the Information charging Brea Rice with Receiving Stolen Property was "lacking in indicia of probable cause" and rendered "official belief in its existence entirely unreasonable." The arrest warrant should not have been issued. But, this does not resolve the second part of the analysis of this motion.

There is no evidence that Sergeant Whitley did anything wrong. He was in possession of accurate knowledge that an arrest warrant was outstanding for the arrest of Brea Rice upon the charge of Receiving Stolen Property. There is no evidence that he was doing anything other than carrying out his duties as a law enforcement officer in serving a felony arrest warrant upon Brea Rice. . . . [Lengthy quote from *Herring v. United States,* —— U.S. ——, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).]

In this case, the Court does not find that police conduct was sufficiently deliberate that exclusion can meaningfully deter it, nor does the Court find that such deterrence is worth the price paid by the justice system. The Court does agree with the Defendant's argument that "constructive possession" is not often a foundationally-sound legal theory upon which charges should be pursued against an individual, and a "dragnet" approach to charging crimes is to be discouraged by the Court by declining to issue arrest warrants or search warrants based solely upon such theories, unsupported by logical facts. But, that does not mean that the officer's conduct in this case rose to the level of deliberate, reckless or grossly negligent conduct— thereby requiring the use of the exclusionary rule to deter such conduct.

Appellant's Appendix at 10–13.

On Rice's motion, the trial court certified its order for interlocutory appeal. Rice then sought and was granted permission by this court to pursue an interlocutory appeal of the trial court's decision.

*Discussion and Decision*

### I. Standard of Review

We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *Montgomery v. State,* 904 N.E.2d 374, 377 (Ind.Ct.App.2009), *trans. denied.* A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In conducting our review, we do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Webster v. State,* 908 N.E.2d 289, 291 (Ind.Ct.App.2009), *trans. denied.* However, we also consider uncontested evidence favorable to the defendant. *Id.*

### II. Good Faith Exception to the Exclusionary Rule

The Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution require warrants to be supported by probable cause. *Hoop v. State,* 909 N.E.2d 463, 466 (Ind.Ct.App.2009), *reh'g denied; see*

*also* Ind.Code § 35–33–5–1(a)(5) ("A court may issue warrants only upon probable cause, supported by oath or affirmation, to search any place for any of the following: ... [a]ny person."); Ind.Code § 35–33–5–2(a) ("[N]o warrant for ... arrest shall be issued until there is filed with the judge an affidavit ... particularly describing the person to be arrested; ... alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that ... the person to be arrested committed the offense; and ... setting forth the facts then in knowledge of the affiant ... constituting the probable cause."). A court reviewing the issuance of a warrant determines whether the magistrate had a "substantial basis for concluding that probable cause existed." *Edwards v. State,* 832 N.E.2d 1072, 1077 (Ind. Ct.App.2005).³ An affidavit that merely states the affiant's conclusion without enough underlying facts and circumstances to allow the magistrate to draw his or her own conclusion is insufficient to establish probable cause. *Kinnaird v. State,* 251 Ind. 506, 516–17, 242 N.E.2d 500, 505–06 (1968). Although we review *de novo* the determination of probable cause, "a trial court's determination of historical fact is entitled to deferential review." *Myers v. State,* 839 N.E.2d 1146, 1150 (Ind.2005). A trial court's factual findings will not be overturned unless they are clearly erroneous. *Id.*

■ The United States Supreme Court long ago articulated an "exclusionary rule" under which evidence obtained in violation of the Fourth Amendment may not be used against a defendant at trial. *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914). *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6

L.Ed.2d 1081 (1961), made the federal exclusionary rule applicable to the states. Because the exclusionary rule is a judicially created means of deterring illegal searches and seizures rather than a constitutionally mandated redress for an individual right, it does not proscribe the use of illegally seized evidence in all proceedings or against all persons. *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court recognized a "good faith" exception to the exclusionary rule for searches conducted pursuant to a warrant. The exclusionary rule does not apply to "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" because the marginal or nonexistent deterrent effect of excluding reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate does not justify the substantial social costs—namely, letting the guilty go free. *Id.* at 922, 104 S.Ct. 3405.

■ In determining the objective reasonableness of reliance on a warrant, "[i]t is necessary to consider ... not only ... the officers who eventually executed a warrant, but also ... the officers who originally obtained it or who provided information material to the probable-cause determination." *Id.* at 923 n. 24, 104 S.Ct. 3405. Suppression is an appropriate remedy if 1) the judicial officer issuing the warrant was misled by information in the affidavit that the affiant knew was false; 2) the judicial officer issuing the warrant wholly abandoned the detached and neutral judicial role; 3) the affidavit supporting the warrant was "so lacking in indicia of probable

---

**3.** For this purpose, the "reviewing court" includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Houser v. State,* 678 N.E.2d 95, 98 (Ind.1997).

cause as to render official belief in its existence entirely unreasonable"; or 4) the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid. *Id.* at 923, 104 S.Ct. 3405.

The Supreme Court recently addressed these principles in *Herring v. United States,* —— U.S. ——, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). Police from one county arrested the defendant based upon information obtained via computer records of an active arrest warrant issued out of another county. After the arrest, police searched the defendant and his vehicle and found drugs and a handgun. When the issuing county pulled the actual warrant to send to the arresting county, it was discovered that the warrant had been recalled but the computer record had not been updated. The defendant appealed the denial of his motion to suppress the drugs and handgun. The Supreme Court, starting with the premise there was a Fourth Amendment violation, considered whether the exclusionary rule should be applied. The Court noted first that officers in the arresting county did nothing wrong, and that although the records in the issuing county should have been updated, the failure to do so was negligent, not reckless or deliberate. *Id.* at 700. "As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level." *Id.* at 702. Accordingly, the Court held "when

police mistakes are the result of negligence . . ., rather than systemic error or reckless disregard of constitutional requirements," the exclusionary rule does not apply. *Id.* at 704.

Indiana, too, applies the exclusionary rule, founded upon Article 1, sections 11 and 14 of the Indiana Constitution: "If the property was secured by search and seizure under the pretext of a search warrant, which was invalid for any reason, then the property so seized could not be used as evidence against the appellant, and its admission over his objection was prejudicial error." *Callender v. State,* 193 Ind. 91, 96, 138 N.E. 817, 818 (1922). Following *Leon,* Indiana adopted the good faith exception under the state constitution as well. *Hopkins v. State,* 582 N.E.2d 345, 351 (Ind.1991) ("[T]he federal good-faith exception enunciated in [*Leon* ] has been held applicable to the prohibition of unreasonable search and seizure found in art. 1, § 11 of the Indiana Constitution."); *Mers v. State,* 482 N.E.2d 778, 783 (Ind.Ct.App. 1985) (holding that "[b]ecause the Indiana exclusionary rule has historical ties to the federal rule, and because [the Indiana constitution] contains substantially identical language as the [F]ourth [A]mendment, we fail to find any compelling reason for rejecting the *Leon* good faith exception in Indiana. . . . Therefore, we, too, adopt such an exclusion."). Indiana has also codified the good faith exception. Ind.Code § 35–37–4–5.[4]

---

4. The statute provides:

(a) In a prosecution for a crime or a proceeding to enforce an ordinance or a statute defining an infraction, the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.

(b) For purposes of this section, evidence is obtained by a law enforcement officer in good faith if:

(1) it is obtained pursuant to:

(A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably

■ The trial court quoted extensively from *Herring* in its order denying Rice's motion to suppress and presumably relied upon it in determining the police conduct in this case was not so deliberate, reckless, or grossly negligent that it would be meaningfully deterred by exclusion of the evidence. *See* Appellant's App. at 11–13. Rice contends that even under the *Herring* analysis, the evidence discovered following her arrest should be suppressed. She has, however, articulated an argument under both the Fourth Amendment, to which *Herring* speaks, and under the Indiana Constitution. *Herring* is arguably distinguishable from Rice's case, but we conclude the state constitutional argument is dispositive and therefore do not discuss whether the federal good faith exception would also apply under these circumstances. *See Mitchell v. State,* 745 N.E.2d 775, 786 (Ind.2001) ("Despite the fact that Indiana's Section 11 appears to have derived from the federal Fourth Amendment and shares the same language, this Court has made an explicit point to interpret and apply Section 11 independently from federal Fourth Amendment jurisprudence."); *State v. Brown,* 840 N.E.2d 411, 417 (Ind. Ct.App.2006) (noting a state may provide greater protection from searches and seizures than the Fourth Amendment requires).

Beginning from the premise the trial court correctly determined no probable cause existed to support the underlying arrest warrant,[5] we consider whether Indiana's good faith exception to the exclusionary rule should apply here to allow admission of the evidence discovered when the warrant was served. The State contends the recent Indiana Supreme Court case of *Jackson v. State,* 908 N.E.2d 1140 (Ind.2009), justifies applying the good faith exception to Rice's case. In *Jackson,* the court "[a]ssum[ed] without deciding that probable cause did not exist to support

---

believed by the law enforcement officer to be valid; or

(B) a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated; and

(2) the law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under IC 5–2–1–9.

5. The State did not concede the lack of probable cause in its brief, but it also stopped short of advocating there was probable cause. Noting one trial court found probable cause where another found it lacking, the State posited that "[a]t most, then, there is a legal debate as to whether probable cause existed." Brief of Appellee at 10. Nonetheless, the State acknowledged that "the question before this Court is not whether the arrest warrant satisfied these constitutional and statutory principles, but rather whether the trial court abused its discretion by denying the motion to suppress by applying a good faith exception to the exclusionary rule." Id. at 5. At oral argument, the State did advocate there was probable cause to support the arrest warrant. We note, however, that the affidavit does not state facts pertaining to when the motorcycle helmet was stolen, how long Rice and Nyeswander had lived in the house, or the reliability and credibility of Steve Edwards and does not include any information corroborating Edwards' hearsay statements regarding Rice and Nyeswander as residents in the home or as the sole owners of any property to be found therein. Moreover, the affidavit does not tie Rice or Nyeswander to the stolen dirt bike referenced therein or to the storage unit from which it was recovered, nor does it show the helmet in any way relates to the dirt bike. Although Indiana Code section 35–33–5–8 provides that a warrant may be issued on the basis of sworn testimony rather than an affidavit, we can assume no such testimony providing the judicial officer with additional information not contained in the affidavit was received here, because the statute also requires that the sworn testimony be recorded and no transcript of a hearing was provided. Therefore, we agree with the trial court's determination there was no probable cause.

issuing a warrant" to search the defendant's home because the law enforcement officer's sworn testimony at the warrant hearing did not establish the credibility of a confidential informant who provided hearsay statements about the defendant's drug dealing. *Id.* at 1143. The court affirmed the trial court's denial of the defendant's motion to suppress, however, holding that the testimony at the warrant hearing was not so lacking in indicia of probable cause as to make reliance upon the warrant objectively unreasonable and the good faith exception therefore applied to its execution. *Id.* at 1144.

The good faith exception to the warrant requirement was created in large part because of the practical reality that once a neutral and detached magistrate has issued a search warrant, there is literally nothing more the policeman can do in seeking to comply with the law.... [I]mposing on officers the obligation to second guess a magistrate's decision in all but the most obvious instances of an affidavit lacking an indicia of probable cause is not a burden the law anticipates.

*Id.* (quotation and citations omitted). The State not only notes officers should not, as a matter of public policy, conduct an independent assessment of probable cause, but also points to the lack of evidence Officer Whitley ever saw the probable cause affidavit on which this warrant was based, therefore concluding that his reliance on the issuance of the warrant itself was objectively reasonable and excluding the evidence would not serve as a deterrent.

■ There is no question that Officer Whitley acted in good faith in serving the arrest warrant. However, we consider the actions of not only the officers who eventually executed a warrant, but also the officers who originally obtained it. *Leon,* 468 U.S. at 923 n. 24, 104 S.Ct. 3405. There-

fore, there must be good faith not just on the part of the officer executing the warrant, but also on the part of the officer procuring it. Nothing in this record suggests Officer Yarnell's affidavit was deliberately misleading or false; however, it did fail to demonstrate any connection between Rice and the crime of which she was accused. A "logical connection" between the contraband and the premises—or, as in this case, between the defendant and the crime—"is a core concept of criminal jurisprudence," and officers are required to have "a reasonable knowledge of what the law prohibits." *Hensley v. State,* 778 N.E.2d 484, 489 (Ind.Ct.App.2002); *see also Stabenow v. State,* 495 N.E.2d 197, 201–02 (Ind.Ct.App.1986) ("The principle that a logical connection must be shown between the items to be seized and the place to be searched so as to establish probable cause is a basic concept within the reasonable knowledge of a police officer."). Suppression is appropriate "where upon facts known to the issuing magistrate or judge 'a well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Doss v. State,* 649 N.E.2d 1045, 1048 (Ind.Ct.App. 1995) (quoting *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. 3405). Not only did this affidavit fail to connect Rice to the alleged crime of receiving stolen property, we also note that Officer Yarnell was the officer who served the original search warrant at the home she occupied and found none of the stolen property for which he was searching. As a presumably well-trained officer involved in the investigation from the outset, Officer Yarnell should have known his affidavit lacked a logical connection between Rice and the stolen motorcycle helmet and was insufficient to support a probable cause determination.

In *Hensley,* we held an affidavit in support of a search warrant lacked a connection between the described premises and

the defendant's alleged criminal activity, and therefore, there was no probable cause to support the warrant. 778 N.E.2d at 488. In also holding "the exclusionary rule would have a deterrent effect in ensuring that an affidavit contains sufficient information from which the magistrate or judge can determine whether probable cause exists," *id.* at 489, we specifically noted the same officer both applied for and executed the search warrant. We also noted that under the circumstances, "*no* reasonable officer could have relied on this search warrant in good faith." *Id.* (emphasis added). That different officers applied for and executed this warrant is of no consequence, as the trial court found the affidavit was so lacking in indicia of probable cause that official belief in the existence of probable cause was entirely unreasonable; that is, it was objectively unreasonable for *any* law enforcement officer to believe there was probable cause. *See* Appellant's App. at 10. Adding an additional layer to the process should not insulate the State from the application of the exclusionary rule in an appropriate case. *Cf. Herring,* 129 S.Ct. at 703–04 (noting if an officer "obtain[s] a warrant on the basis of a 'bare bones' affidavit and then rel[ies] on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search[,]" exclusion would be justified) (quoting *Leon,* 468 U.S. at 923 n. 24, 104 S.Ct. 3405); *Hirshey v. State,* 852 N.E.2d 1008, 1013–14 (Ind.Ct. App.2006) (holding, where officer who applied for search warrant that lacked probable cause was among several officers executing the warrant, it was unreasonable for any of the officers to rely on the warrant and declining to apply the good faith exception), *trans. denied.*

We are mindful of the supreme court's statements in *Jackson* that upon applying to a judicial officer for a warrant, an officer has done all he can be expected to do,

and we do not intend to imply the probable cause determination behind every warrant is inherently suspect and should be reviewed as a matter of course. *See Stephenson v. State,* 796 N.E.2d 811, 814 (Ind. Ct.App.2003) ("[O]nce the State has obtained a magistrate's determination of probable cause, a presumption of validity obtains [and] the burden is upon the defendant to overturn that presumption.") (quotation and citations omitted), *trans. denied.* However, we are also mindful it is the officer's obligation to set forth facts amounting to probable cause and that "care should be taken when applying [the good faith] exception to ensure that [it] does not swallow the exclusionary rule." *Caudle v. State,* 749 N.E.2d 616, 621 (Ind. Ct.App.2001) (citations omitted), *aff'd on reh'g, trans. denied.* If we were to apply the good faith exception in this case and hold it was objectively reasonable for Officer Whitley to rely on a warrant supported by an affidavit wholly lacking probable cause, officers would have no incentive to discover and attest to facts amounting to probable cause in future affidavits, the defendant's right to seek review of the probable cause determination would be empty, and the exclusionary rule would have no meaning.

Although the trial court found Officer Yarnell's affidavit lacking in indicia of probable cause such that official belief in its existence was entirely unreasonable, it also found the police conduct was not sufficiently deliberate that exclusion of the evidence could meaningfully deter it. The purpose of the exclusionary rule is to deter law enforcement officers from committing constitutional violations and therefore, evidence should be suppressed "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional...." *Herring,* 129

S.Ct. at 701 (quoting *Illinois v. Krull,* 480 U.S. 340, 348–49, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987)). We believe Officer Yarnell may be charged with knowledge that an arrest warrant issued on the basis of his affidavit was unconstitutional and as in *Hensley,* exclusion can therefore have a deterrent effect by ensuring future affidavits contain sufficient information from which a judicial officer can make a determination of probable cause and do not merely state conclusions as a substitute for adequate police investigation.

### Conclusion

As the trial court found, the warrant for Rice's arrest was based upon an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." The police conduct therefore falls outside Indiana's good faith exception to the exclusionary rule and the trial court abused its discretion in denying Rice's motion to suppress the evidence seized as a result of her arrest.

Reversed.

BAKER, C.J., and BAILEY, J., concur.