**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RANDALL DORSETT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1208-CR-623 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt Eisgruber, Judge
Cause No. 49G01-1008-MR-064718

**May 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Following a jury trial, Randall Dorsett was convicted of arson, a Class B felony; murder, a felony; and robbery, a Class B felony; and sentenced to eighty-five years. Dorsett appeals his convictions, raising two issues for our review:  1) whether the trial court abused its discretion in admitting DNA evidence upon finding Dorsett's Fourth Amendment rights were not violated in the collection of the evidence; and 2) whether the Abstract of Judgment must be corrected.  Concluding the trial court did not abuse its discretion in the admission of evidence and that the Abstract does not require a correction, we affirm.

## Facts and Procedural History

On July 17, 2008, Vyon Goodman was found shot to death in an alley in Indianapolis.  The vehicle he had last been seen driving was found some distance away, partially burned.  A gun, two cellphones, and various other items were recovered from the vehicle.  The phones were traced to Dorsett and his girlfriend, and police recovered two unidentified male DNA profiles from one of the phones.  Indianapolis Metropolitan Police Department officer Jeffrey Wager requested and received a warrant to obtain a buccal cell sample from Dorsett.  The warrant was served on November 16, 2008. Analysis of the sample indicated Dorsett's DNA matched one of the DNA profiles from the cellphone.

In August 2010, the State charged Dorsett with murder and felony murder, both felonies; robbery, a Class A felony; and arson, a Class B felony.  Dorsett filed a motion to suppress the evidence obtained as a result of the November 2008 warrant on the ground that the affidavit in support of the request for a limited arrest warrant "does not state facts

2

that would warrant a reasonable person to believe that [Dorsett] had committed the criminal act in question. Thus, there is no probable cause to support the limited arrest of [Dorsett] and the seizure of a buccal cell swab from his person." Appellant's Appendix at 66. The trial court denied the motion following a hearing. At Dorsett's jury trial, the DNA evidence was admitted over Dorsett's Fourth Amendment objection. The jury found Dorsett guilty on each count. The trial court entered judgment of conviction as to arson, murder, and robbery as a Class B felony, and sentenced Dorsett to an aggregate sentence of eighty-five years. Dorsett now appeals his convictions. Additional facts will be provided as necessary.

Discussion and Decision

I. Fourth Amendment

A. Standard of Review

Dorsett contends the trial court abused its discretion in admitting during his trial DNA evidence taken from a buccal swab.[1] A trial court has broad discretion in ruling on the admissibility of evidence. Packer v. State, 800 N.E.2d 574, 578 (Ind. Ct. App. 2003), trans. denied. We will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. Id. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id. In reviewing a trial court's ruling on the admissibility of evidence from an allegedly illegal search and seizure, we do not reweigh the evidence, but we

---

[1] Although Dorsett originally challenged the admission of the DNA evidence though a pre-trial motion to suppress, he did not seek an interlocutory appeal of the trial court's ruling on that motion, and therefore we are reviewing the trial court's admission of the evidence at trial. See Jefferson v. State, 891 N.E.2d 77, 80 (Ind. Ct. App. 2008), trans. denied.

consider anew any legal question of the constitutionality of the search or seizure. Meredith v. State, 906 N.E.2d 867, 869 (Ind. 2009).

## B. DNA Evidence

Dorsett contends he was arrested in violation of the Fourth Amendment because the State neither secured an arrest warrant nor showed probable cause to believe he had committed a crime before arresting him for the purpose of taking a buccal cell sample.

### 1. Warrant

The State filed a "Request for Arrest Warrant for Limited Purpose of Obtaining a Buccal Cell Sample." The trial court signed a document entitled "Search Warrant." Dorsett contends there is no language in the "Search Warrant" authorizing him to be taken into custody and that this means the trial court found probable cause for a search but not for an arrest. The State justifies Dorsett's detention by arguing that a search warrant for bodily fluids implicitly includes the authority to bring a person into custody for the purpose of executing the search. We agree with the State.

Generally, detention is allowed without suspicion of any wrongdoing during the execution of a search warrant due to three law enforcement interests related to the lawful search: 1) officer safety, 2) accommodating the orderly completion of the search, and 3) preventing flight. Muehler v. Mena, 544 U.S. 93, 98 (2005). Additionally, detention and transport is permissible for collection of bodily fluids, such as blood, urine, and semen samples. See Schmerber v. California, 384 U.S. 757, 770-71 (1966); Cutter v. State, 646 N.E.2d 704, 711 (Ind. Ct. App. 1995), trans. denied. Such searches made by medical personnel in a medical environment in accordance with usual medical practices are reasonable. Schmerber, 384 U.S. at 771-72.

4

In Cutter, the search warrant authorized the search of "the person of Larry Cutter", and authorized seizure of "[h]ead hair, pubic hair, saliva, blood and fingernail specimens, of Larry Cutter." 646 N.E.2d at 711. Cutter argued that the search warrant alone was insufficient to obtain the bodily samples, because he would necessarily be seized in order to secure the samples. However, we held that "[b]ecause police had a valid search warrant, whether Cutter was under arrest at the time the bodily samples were obtained is of no consequence." Id. Implicit in this statement is the principle that a valid search warrant authorizing the taking of bodily samples also authorizes such detention of the subject of the warrant as is necessary to obtain the samples. Id.

Dorsett argues that it was unnecessary to detain him in any way to obtain the buccal swab because it was not performed, nor did it need to be performed, by a medical professional. We disagree. Officer Wager described the extraction process in which the buccal swab was obtained, which involved the subject rubbing a sterile plastic swab on the inside of his cheek. The fact that it is unnecessary for medical personnel, or even a law enforcement officer, to physically perform the extraction does not diminish the law enforcement interests that allow for general detention during the execution of a search warrant. In order to complete the search in an orderly manner, and for their own safety, law enforcement must be allowed to control the environment in which a buccal swab is taken. Law enforcement officers cannot foresee the circumstances they will encounter when executing a search warrant to know whether they will be able to control the environment sufficiently to obtain the sample, or whether an arrest will be necessary. Here, Dorsett does not provide any evidence as to the place or circumstances he was in at the time the search warrant was executed, so no independent determination can be made

5

as to whether the buccal swab could reasonably have been obtained without his detention and transport to the Marion County Jail.

It is also important to note that, in this case, buccal swabs from multiple individuals were taken. It is in the interest of both law enforcement and Dorsett that any DNA evidence taken was preserved in an environment that prevented destruction or contamination of the evidence. Transporting Dorsett to the Marion County Jail so that Officer Wager could observe and obtain Dorsett's buccal swab served the purpose of both preserving the evidence and preventing its contamination.

Thus, in order to meet the substantial law enforcement interests in executing search warrants, and to preserve and prevent contamination of DNA evidence, the authority to detain a person as is necessary, including an arrest for the limited purpose of obtaining a buccal swab, is implicit in the issuance of a valid search warrant authorizing the taking of bodily samples. While we may question whether the trial court indeed intended to issue only a search warrant or whether the title of the warrant was a scrivener's error, Dorsett's Fourth Amendment rights were not violated regardless.

## 2. Probable Cause

Dorsett also argues that the trial court abused its discretion in admitting the buccal swab into evidence because the State failed to prove there was probable cause to support the issuance of the search warrant. In ruling on Dorsett's motion to suppress evidence, the trial court relied heavily on Garcia-Torres v. State, 949 N.E.2d 1229, 1235 (Ind. 2011), which favorably compared the treatment of DNA evidence to fingerprints. The trial court found that only reasonable suspicion, not probable cause, was necessary to seize Dorsett for the purpose of obtaining a buccal swab. Although our supreme court

suggested in Garcia-Torres that a cheek swab for DNA may not constitute a search for Fourth Amendment purposes, it did not explicitly hold that mere reasonable suspicion was sufficient to justify the taking of DNA evidence through a buccal swab. See id. at 1236-37. However, we need not address the appropriate standard because the trial court found further that there was also probable cause to support the search warrant.

A court reviewing the issuance of a warrant determines whether the magistrate had a substantial basis for concluding that probable cause existed. Rice v. State, 916 N.E.2d 296, 301 (Ind. Ct. App. 2009), trans. denied. An affidavit that merely states the affiant's conclusion without enough underlying facts and circumstances to allow the magistrate to draw his or her own conclusion is insufficient to establish probable cause. Id. A trial court's determination of historical fact is entitled to deferential review, although we review the determination of probable cause de novo. Id.

Dorsett argues that the evidence presented in support of probable cause for the issuance of the warrant was "virtually non-existent." Appellant's Reply Brief at 5. However, based upon the discovery of the cell phone in the murder victim's burned out vehicle, there was reason to believe that the cell phone holder was involved in the murder. The State presented evidence that pointed to Dorsett's connection to the cell phone through numerous calls made to his younger sister from a number identified as "Big D" on her phone. Police quickly learned by showing his photo around that Dorsett was known as "D" and that Dorsett stayed at a house rented by his sister. Thus, although the affidavit for probable cause could have been more detailed, it was still sufficient to establish probable cause, and the search warrant was validly obtained.

7

## II. Abstract of Judgment

The trial court properly completed the Abstract of Judgment by showing the correct offense for which Dorsett was found guilty, namely, robbery as a Class A felony, but directing that a Class B felony be entered for that count. The Abstract of Judgment shows that Dorsett "was found Guilty of the following crimes . . . : Count 1, Arson/FB, Count 2, Murder/F, Count 4, Robbery/FA" that he was sentenced to ten years for Count 1, sixty-five years for Count 2, and ten years for Count 4, and under "additional comments and recommendations" that "Count 4 Judgment of Conviction entered as a 'B' felony." Appellant's App. at 33. Unlike Willey v. State, 712 N.E.2d 434, 445 n.8 (Ind. 1999), where the abstract of judgment was not in accordance with the oral pronouncement at sentencing and also led to an error on the written sentencing order, Dorsett's abstract of judgment accurately reflects the proceedings (the crimes of which he was found guilty) and the oral pronouncement at sentencing (the reduction in class of crime for the robbery conviction). Furthermore, the sentence of ten years for the robbery count is itself reflective of a Class B felony sentence. Thus, the Abstract is accurate and it is unnecessary to remand for correction.

## Conclusion

The trial court did not err in admitting evidence from the buccal swab taken from Dorsett as the evidence was not obtained in violation of the Fourth Amendment. Further, the Abstract of Judgment accurately reflects the judgment of conviction. Dorsett's convictions are, therefore, affirmed.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.