## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 27 2017, 10:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Thoma
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony J. Cooper,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 27, 2017

Court of Appeals Case No.
02A03-1702-CR-410

Appeal from the Allen Superior Court

The Honorable Wendy W. Davis, Judge

Trial Court Cause No.
02D06-1606-F2-13

**Mathias, Judge**

[1] After a jury trial in Allen Superior Court, Anthony J. Cooper ("Cooper") was convicted of one count of Level 2 felony dealing in cocaine or narcotic drug,

one count of Level 6 felony maintaining a public nuisance, one count of Class A misdemeanor possession of a controlled substance, and one count of Class B misdemeanor possession of marijuana. The issue on appeal is whether the trial court abused its discretion by admitting evidence obtained as the result of the execution of a search warrant.

We affirm.

## Facts and Procedural History

On May 11, 2016, Fort Wayne Police Detective George Nicklow ("Detective Nicklow") received information from a confidential informant ("CI") that drugs and weapons were located inside a residence at 1808 Warren Street. Detective Nicklow had known and worked with this particular CI on several previous occasions which had led to three or four felony arrests.

After receiving the tip, Detective Nicklow reviewed the narcotics tip line and discovered a concerned citizen's call from March 23, 2016, relating to the residence in question. The tip indicated that at 1808 Warren Street there was: (1) constant activity at the home from people who did not live there, (2) brief stays happening at all hours of the day and night, and (3) the presence of a gray BMW SUV that the citizen believed was involved with drugs. Detective Nicklow later spoke with the concerned citizen about the substance of the call and verified that the same reported conduct was ongoing.

In May 2016, Detective Nicklow and other officers began surveillance on 1808 Warren Street. The officers noticed that the gray BMW SUV mentioned by the

concerned citizen's call was often parked in front of or across from the residence. By running a BMV check, Detective Nicklow verified that the vehicle was owned by Cooper. During this time, Detective Nicklow also determined that Phillip Tate ("Tate") listed 1808 Warren Street as his address on his driver's license. Tate and Cooper were brothers, and during the period of surveillance and investigation, Tate was incarcerated.

[6] On May 31, 2016, Detective Nicklow and other officers set up a 24-hour recording device in the 1800 block of Warren Street. Over the next three days Detective Nicklow noticed a specific pattern develop at the residence.

[7] Cooper's BMW would drive up and park either in front of or across from 1808 Warren Street. Cooper would exit the vehicle and enter the residence. Soon after, another person or persons would enter the house and exit approximately one to three minutes later. Cooper would then leave the house, get back into his BMW, and drive away. The exact same pattern repeated itself several times each day, usually during the afternoon.

[8] On June 2, 2016, Fort Wayne Police Detective Jeffrey Ripley ("Detective Ripley") attempted a trash pull at the residence. Upon exiting his vehicle, Detective Ripley noticed a faint odor of marijuana coming directly from 1808

Warren Street. As Detective Ripley walked closer to the house, the odor became more pronounced.[1]

[9] Based on the information from the CI, the tip from and discussion with the concerned citizen, the surveillance and observations of the residence, and the statements from Ripley, Detective Nicklow applied for and obtained a search warrant for the residence on June 3, 2016.

[10] During execution of the search warrant, officers discovered: five firearms (two of which were stolen), over 60 grams of cocaine, marijuana, alprazolam, scales, rubber gloves, baking powder, a cutting agent, and mail addressed to Cooper.[2]

[11] The State charged Cooper with four counts: Count I, Level 2 felony dealing in cocaine or narcotic drug; Count II, Level 6 felony maintaining a common nuisance; Count III, Class A misdemeanor possession of a controlled substance; and Count IV, Class B misdemeanor possession of marijuana.

---

[1] In a deposition a few weeks later, Detective Ripley stated that he was not sure if the odor came from the residence or the SUV parked nearby. However, during Cooper's motion to suppress hearing, Detective Ripley explained the discrepancy. He clarified that he was 99% sure that the smell was emanating from the home, but because of the 1% chance it could have been coming from the vehicle, he did not think it was fair to say with absolute certainty that the scent was coming from 1808 Warren Street.

[2] At the same time, a second team of officers conducted a traffic stop on Cooper because he was driving with a suspended license. During the stop, officers discovered three separate bundles of cash in Cooper's pockets totaling $1,868.

[12] Cooper filed a motion to suppress the evidence discovered during the execution of the search warrant. On December 16, 2016, the trial court held a hearing on the motion. The trial court denied Cooper's motion to suppress

[13] A two-day jury trial commenced on January 11, 2017. Throughout trial, Cooper raised a continuing objection to all evidence obtained as a result of the search warrant. The jury found Cooper guilty on all four counts. On February 9, 2017, the trial court sentenced Cooper to an aggregate sentence of twenty-six and one-half years. Cooper now appeals.

## Discussion and Decision

[14] Cooper contends that the evidence the State obtained from the search of 1808 Warren Street is inadmissible. Specifically, he argues that the search warrant lacked a substantial basis, and therefore, the search of the residence was unlawful under the Fourth Amendment.[3]

[15] Cooper frames the issue as whether the court erred by denying his motion to suppress. However, because he seeks review after a conviction, the issue is more appropriately framed as whether the trial court properly admitted the evidence at trial. *Fry v. State*, 25 N.E.3d 237, 243 (Ind. Ct. App. 2015), *trans. denied*. A

---

[3] Cooper mentions Article 1, Section 11 of the Indiana Constitution, but he fails to provide an independent analysis. Failure to make a cogent argument under Article 1, Section 11 constitutes waiver of the issue on appeal. *See Abel v. State*, 773 N.E.2d 276, 278 n. 1 (Ind. 2002) (concluding state constitutional claim waived where defendant presented no authority or independent analysis supporting separate standard under state constitution); *West v. State*, 755 N.E.2d 173, 181 (Ind. 2001) (citations omitted); Ind. Appellate Rule 46(A)(8). Therefore, we analyze Cooper's argument under the Fourth Amendment only.

trial court has broad discretion in ruling on the admissibility of evidence and we will only disturb its rulings where it is shown that the court abused its discretion. *Id*. at 243–44. When reviewing a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence, and we consider conflicting evidence most favorable to trial court's ruling. *Cartwright v. State*, 26 N.E.3d 663, 667 (Ind. Ct. App. 2015), *trans. denied.*

[16] A valid search warrant must comply with the Fourth Amendment prohibition against unreasonable searches and seizures and statutory law.[4] The Fourth Amendment requires probable cause for the issuance of a warrant. *Rader v. State*, 932 N.E.2d 755, 758 (Ind. Ct. App. 2010), *trans. denied*. Probable cause is a fluid concept based on the facts of each individual case and it requires only a probability of criminal activity, and not a *prima facie* showing. *Fry*, 25 N.E.3d at 244. In determining whether an affidavit provided probable cause, any doubtful cases should be resolved in favor of upholding the warrant. *Bradley v. State*, 4 N.E.3d 831, 840 (Ind. Ct. App. 2014), *trans. denied*.

[17] Our duty on review is to determine whether the issuing magistrate had a substantial basis to issue the warrant. *Fry*, 25 N.E.3d at 244. The magistrate's task is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that

---

[4] *See* Ind. Code § 35-33-5-2 (governs the information that must be included in an affidavit for a search warrant).

contraband or evidence of a crime will be found in a particular place. *Bradley,* 4 N.E.3d at 840 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also* I.C. § 35-33-5-2(a); *Walker v. State,* 829 N.E.2d 591, 594 (Ind. Ct. App. 2005) (stating that "Probable cause is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime."), *trans. denied.* Although we review whether the issuing magistrate had a substantial basis *de novo*, we give significant deference to the magistrate's decision. *Rader*, 932 N.E.2d at 759. We consider only the evidence presented to the issuing magistrate, and not any post hoc justifications for the search. *Id.*

[18] Here, the question is whether probable cause existed to support the search warrant issued for the residence at 1808 Warren Street.[5] The search warrant affidavit contains the following information from Detective Nicklow:

1. Detective Nicklow was contacted on May 11, 2016, by a CI about a location where cocaine, heroin, and marijuana were allegedly being sold, and where subjects inside had guns.
2. The CI identified the location as 1808 Warren St.
3. The CI had provided "proven, reliable information in the past that has led to several felony arrests."

---

[5] At the hearing on the motion to suppress, the prosecutor argued that Cooper lacked standing to challenge the search and seizure. Tr. Vol. II, pp. 35–36. This argument has merit based on the Supreme Court's decision in *Minnesota v. Carter*, 525 U.S. 83 (1998). In *Carter*, the Court held that "one who is merely present with consent of the householder may not" claim the protection of the Fourth Amendment. *Id.* at 90. Cooper did not live at 1808 Warren Street, and just as the defendants in *Carter*, he was "essentially present for a business transaction and [] only in the home for a matter of hours." *Id.* However, the State did not raise this issue on appeal, and it is therefore waived. App. R. 46(A)(8)

4. Detective Nicklow checked prior anonymous tips called into the Fort Wayne Police Department and was advised a concerned citizen tip had been called in on March 23, 2016, concerning 1808 Warren Street.

5. The concerned citizen stated that a large amount of traffic was going in and out of the residence with subjects staying for small periods of time, and a gray BMW was associated with the house.

6. Detective Nicklow observed the gray BMW SUV at the residence when conducting surveillance and he verified through BMV records that the vehicle was registered to Cooper.

7. Six particular examples of "quick stops that are consistent with street level narcotics dealing" are described between May 31, 2016, and June 2, 2016.

8. On June 2, 2016, Detective Ripley, who was conducting surveillance on the residence, observed "an overwhelming odor of raw marijuana coming from 1808 Warren St."

Mot. Supp. Ex. Vol., Defendant's Ex. A.

[19] Prior to requesting the search warrant, Detective Nicklow spoke with the concerned citizen and was able to learn that the activity leading to the original call was still continuing at 1808 Warren Street. Further, Detective Nicklow was able to corroborate the concerned citizen's statements through investigation and surveillance.

[20] Cooper cites to our decision in *Newby v. State*, 701 N.E.2d 593 (Ind. Ct. App. 1998), to argue that the tip from the CI and the concerned citizen are not "useful or helpful" because credibility was not established. Appellant's Br. at 21. In that case, detectives received information that a cocaine buy was going to take place in a grocery store lot. *Newby*, 701 N.E.2d at 596. During the investigation, law enforcement officers obtained consent to search Steve

Calloway's ("Calloway") car and found drugs in the console. *Id.* Sergeant Wilkerson asked Calloway from whom he had purchased the drugs. *Id.* Although initially reluctant, after cajoling by the detectives, Calloway identified Newby as his supplier. *Id.*

[21] The next morning detectives monitored a call between Calloway and Newby; however, there was no mention of drugs or money. *Id.* Later that day, State Trooper Guinn drove by Newby's residence to verify Calloway's description of it and its location. *Id.* Thereafter, Trooper Guinn signed a search warrant affidavit for Newby's residence, and it was issued. *Id.* On interlocutory appeal, we reversed Newby's denial of his motion to suppress. *Id.* at 604.

[22] The primary issue with the warrant in *Newby* was that Calloway's credibility was not established by the facts in the affidavit for the search warrant. *Id.* at 601. We pointed out that "neither Sergeant Wilkerson nor Trooper Guinn corroborated facts relayed to them by Calloway that connected Newby to illegal activity." *Id.* We distinguished *Newby* from our supreme court's decision in *Houser v. State* and explained, "in *Houser* . . . the police officers who sought the search warrant conducted an independent investigation of the crime scene and observed facts relayed to them by the informant." *Id.* at 600 (citing *Houser v. State*, 678 N.E.2d 95, 100 (Ind. 1997)).

[23] Similar to *Houser*, and unlike *Newby*, the affidavit here outlined sufficient facts to support issuing the warrant. After Detective Nicklow received the tip from the CI on May 11, 2016, he corroborated the CI's information in several ways.

First, Detective Nicklow checked the concerned tip line and identified a call pertaining to 1808 Warren Street. Although the call was placed on March 23, 2016, Detective Nicklow met with the concerned citizen, and established that the behavior at the residence which originally led to the call was ongoing. As our courts have consistently noted, "the credibility of a concerned citizen is, as a general rule, inherently more credible than that of a [] CI." *Scott v. State*, 883 N.E.2d 147, 155 (Ind. Ct. App. 2008); *see also State v. Renzulli*, 958 N.E.2d 1143, 1147 (Ind. 2011); *Russell v. State*, 993 N.E.2d 1176, 1180 (Ind. Ct. App. 2013); *Billingsley v. State*, 980 N.E.2d 402, 409–10 (Ind. Ct. App. 2012), *trans. denied.*

[24] Second, Detective Nicklow conducted an investigation which determined that the SUV described by the concerned citizen was owned by Cooper. Also, surveillance was done on 1808 Warren Street where the patterns described by both the CI and the concerned citizen were corroborated. *See State v. Fridy*, 842 N.E.2d 835, 840 (Ind. Ct. App. 2006) (holding that an affidavit for a search warrant is sufficient when it contains information that establishes that the totality of the circumstances corroborates statements from a confidential informant).

[25] Third, Detective Ripley noticed a strong smell of marijuana coming from the residence when he was attempting to conduct a trash pull within ten feet of the front door. He testified, "I was facing the house, took a deep breath in through my nose, I could smell what I know from training and experience as raw marijuana." Tr. Vol. II, p. 25; *see Redden v. State*, 850 N.E.2d 451, 462 (Ind. Ct. App. 2006) (finding that a detective's detection of a chemical odor combined

with other observations provided a substantial basis for the search warrant of the defendant's home), *trans. denied.*

[26] The CI's information, the concerned citizen's information, and the independent police investigation corroborating both the CI and concerned citizen is more than enough to establish that probable cause existed for issuing the warrant. *See Scott*, 883 N.E.2d at 155 (Ind. Ct. App. 2008) (holding a warrant was supported by probable cause because the CI's information was corroborated by a confidential informant as well as additional police investigation.); *see also Cheever-Ortiz v. State*, 825 N.E.2d 867, 873 (Ind. Ct. App. 2005) (holding an anonymous tip along with corroboration by independent police work was enough to support a search warrant being issued for a home). Therefore, the trial court did not abuse its discretion when it admitted evidence over Cooper's objection at trial.[6]

---

[6] Cooper cites five cases not previously mentioned after asserting, "suppression in this case is appropriate where no reasonably prudent law enforcement officer could have harbored an objectively reasonable belief in the existence of probable cause." Appellant's Br. at 22. However, each of the five cases are distinguished from the case before us. In *Doss v. State*, 649 N.E.2d 1045, 1047–49 (Ind. Ct. App. 1995), the trial court found the warrant was defective on its face and this court held that the good faith exception did not apply in part because the officer did nothing to corroborate the CI's statements. In *Hirshey v. State*, 852 N.E.2d 1008, 1013 (Ind. Ct. App. 2006), *trans. denied,* the only basis for reliability of the CI was that his statements were against penal interest, however, we held this was not the case and therefore the warrant lacked probable cause. In *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind. 1997), the information came from an anonymous tip, whose credibility was entirely unknown. Also, the officer did nothing more than corroborate the assertion that the defendant appeared to live where the informant told the officer, and that marijuana was being grown on two plots of land miles from the defendant's residence. *Id. Rice v. State*, 916 N.E.2d 296, 303-04 (Ind. Ct. App. 2009), *trans. denied*, was decided on Indiana Constitutional grounds. Further, the trial court determined that no probable cause existed to support an underlying arrest warrant because there was no connection between the defendant and the crime for which she was accused. *Id.* Finally, in *Everroad v. State*, 590 N.E.2d 567, 571 (Ind. 1992), *reh'g denied,* all factual allegations in the probable cause affidavit were based on hearsay and there was no evidence of a credible source or any corroboration substantiating the hearsay statements.

# Conclusion

[27] For all of these reasons, we conclude that the trial court acted within its discretion when it admitted evidence that the officers discovered while executing the search warrant on 1808 Warren Street.

[28] Affirmed.

Kirsch, J., and Altice, J., concur.